**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BLAZE WATERS,** | |
| **Plaintiff,** | |
| **v.** | **CIVIL ACTION NO.  19-3518** |
| **AMTRAK,** | |
| **Defendant.** | |

<u>**MEMORANDUM OPINION**</u>

**Rufe, J.**                                                                                    **April 24, 2020**

Title II of the Americans with Disabilities Act ("ADA") prohibits, among other things, discrimination against individuals with disabilities in connection with transportation. Plaintiff Blaze Waters, who is proceeding *pro se*, alleges that the National Railroad Passenger Corporation ("Amtrak") discriminated against him in violation of the ADA when he traveled on one of its trains. Amtrak has moved to dismiss, arguing that Waters lacks standing and that the Amended Complaint fails to state a claim and is unsigned.

I.    **BACKGROUND**[1]

"Defendant Amtrak is a rail carrier with a statutory responsibility to provide intercity rail transportation throughout the United States."[2] Plaintiff Blaze Waters is a disabled individual who uses breathing equipment.[3] He travels "frequently" on Amtrak trains.[4] He embarked on a multi-

---

[1] The following facts are drawn from the Amended Complaint and assumed true for purposes of this Motion to Dismiss.

[2] *Disabled in Action of Pa. v. Nat'l Passenger R.R. Corp.*, 418 F. Supp. 2d 652, 654 (E.D. Pa. 2005) (citing 29 U.S.C. § 24101(a)).

[3] Amend. Compl. at 3.

[4] *Id.*

city itinerary from Charlotte, North Carolina to Atlanta, Georgia, traveling with a companion.[5] Both Waters and his travel companion are "visibly disabled."[6]

Shortly after they boarded the train and took their reserved "seats within the handicap section," a "train attendant" approached them and loudly insisted they "move and sit the f*** down" in the non-accessible seating.[7] Waters explained that he had purchased "handicap seating," but the attendant would not listen; she continued to insist that they move. Her "loud voice and demeanor . . . woke up the other passengers, who then started heckling and threatening" Waters and his companion to comply with her instructions.[8] The attendant "used discriminatory words pertaining to [their] sexualities and health statuses." She also insinuated that Waters and his companion "couldn't afford handicap seating," and yelled, "If you want a handicap seat, you have to pay for it!"[9]

When Waters eventually located a manager in another train car, the manager easily confirmed that Waters had indeed reserved and paid for accessible seating, but did nothing else to rectify the situation.[10] As a result, Waters was unable to use his oxygen machine.[11] Waters also alleges that he felt "disrespected, humiliated, embarrassed and discriminated against," and that the "stress of the situation" caused "chest and leg pains."[12]

Waters sued Amtrak in state court and Amtrak removed the case to this Court.[13] Amtrak moved to dismiss.[14] Waters filed an Amended Complaint, which is unsigned.[15] Amtrak then

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.* at 3–4.
[11] *Id.* at 4.
[12] *Id.* at 4.
[13] Doc. No. 1.
[14] Doc. No. 5.
[15] Doc. No. 10.

moved to dismiss again.[16] Waters filed an opposition to the Motion to Dismiss several days after the time to respond had passed, explaining that he had been recovering from a surgery that took place the day Amtrak's Motion was filed.[17]

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to demonstrate that he is entitled to relief.[18] In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[19] Courts are not, however, bound to accept as true legal conclusions framed as factual allegations.[20] Something more than a mere *possibility* of a claim must be alleged; a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[21] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[22]

With these standards in mind, a complaint filed *pro se* is "to be liberally construed."[23] A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."[24] Nonetheless, *pro se* plaintiffs are still subject to basic pleading requirements.[25] The Third Circuit has further instructed that if a complaint is vulnerable

---

[16] Doc. No. 11.

[17] Doc. No. 13. The Court finds it appropriate to consider the merits of the case despite the slightly overdue filing.

[18] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007).

[19] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[20] *Twombly*, 550 U.S. at 555, 564.

[21] *Id.* at 570.

[22] *Id.* at 562 (internal quotation marks and citations omitted).

[23] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[24] *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

[25] *Rhett v. New Jersey State Superior Court*, 260 F. App'x 513, 515 (3d Cir. 2008).

3

to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile.[26]

### III. DISCUSSION

#### A. Standing

"Article III of the Constitution limits the judicial power of the United States to the resolution of Cases and Controversies, and Article III standing enforces the Constitution's case-or-controversy requirements."[27] A plaintiff establishes "the irreducible constitutional minimum of standing" by showing (1) an injury in fact that is concrete and particularized, as well as actual or imminent; (2) "a causal connection between the injury and the conduct complained of," such that the injury is "fairly traceable" to the defendant's conduct; and (3) a likelihood that the injury will be redressed by a favorable decision.[28]

Amtrak argues that Waters lacks standing because he does not have a protected interest in sitting in the accessible seating he purchased, and thus did not suffer an injury in fact when he was forced to move elsewhere. This argument relies heavily on *Levine v. National Railroad Passenger Corp.*, a decision by another district court in a case brought by a disabled passenger against Amtrak.[29] In *Levine*, the court ruled that the plaintiff lacked standing because her claims were based entirely on Amtrak's alleged violation of certain regulations implementing the ADA—specifically, regulations governing accessibility for users of mobility aids. But the plaintiff's service dog was not a mobility aid, the court determined, and so even assuming she had been denied access to the seating she purchased, no "cognizable interest" created by the

---

[26] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).
[27] *Nichols v. City of Rehoboth Beach*, 836 F.3d 275, 279 (3d Cir. 2016) (quoting *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597–98 (2007)).
[28] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations omitted).
[29] 80 F. Supp. 3d 29 (D.D.C. 2015).

ADA had been "invaded."[30] The court specifically noted that Levine had not alleged "violations of other provisions of the regulations," including 49 C.F.R. § 37.5, "which prohibits, in general terms, discrimination against an individual in connection with the provision of transportation service."[31]

Here, by contrast, Waters does not base his claim on the mobility-aid regulations. Instead, the *pro se* Amended Complaint alleges a violation of the ADA's anti-discrimination provision generally, that is, it alleges "discrimination against people w[ith] disabilities during transportation."[32] Amtrak's argument that Waters lacks standing because his oxygen device is not a mobility aid is therefore misplaced. Waters has not alleged a violation of any particular regulation, but rather that he is a disabled person who was singled out for harassment and disparagement on the basis of his disability. The ADA creates a cognizable interest in not "be[ing] subjected to discrimination" in any "qualified individual with a disability,"[33] and its implementing regulations set out a blanket rule that "[n]o entity shall discriminate against an individual with a disability in connection with the provision of transportation service."[34] Waters alleges that this cognizable interest was invaded, which amounts to an injury in fact conferring standing.

### B.    Elements of Discrimination

Amtrak also argues that the Amended Complaint does not state a claim for discrimination under the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

---

[30] *Id.*
[31] *Id.*
[32] Amend. Compl. at 2.
[33] 42 U.S.C. § 12132.
[34] 49 C.F.R. § 37.5(a).

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[35] As the Third Circuit held in another case involving Amtrak, "[t]o make out a prima facie case of discrimination under the ADA, [the plaintiff] must establish that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, *or discrimination* was by reason of his disability."[36]

Amtrak does not dispute that it is a public entity subject to Title II of the ADA.[37] When a public entity like Amtrak is sued under Title II, the entity is vicariously liable for the acts of its employees.[38]

Amtrak also does not dispute for purposes of the Motion to Dismiss that Waters is a qualified individual with a disability, as he alleges in the Amended Complaint. Instead, Amtrak argues that Plaintiff has not alleged that he was "excluded from a service, program, or activity of a public entity"[39] because he was "able to board the train" and complete his trip as planned.[40] This argument relies on the formulation of the prima facie case articulated by the Third Circuit in *Disability Rights New Jersey, Inc. v. Commissioner, New Jersey Department of Human Services.*[41] The Third Circuit's decision in that case, which considered the right of involuntarily

---

[35] 42 U.S.C. § 12132.
[36] *Johnson v. Amtrak*, 390 F. App'x 109, 113 (3d Cir. 2010) (emphasis added); *see also McCree v. Se. Pa. Transp. Auth.*, No. 07-4908, 2009 WL 166660, at *11 (E.D. Pa. Jan. 22, 2009) (explaining that a plaintiff must demonstrate that "(1) she is a qualified individual with a disability; (2) she was either excluded from or otherwise denied the benefits of some public entity's services, programs or activities, *or was otherwise discriminated against* by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability" (emphasis added)); *Spieth v. Bucks Cty. Hous. Auth.*, 594 F. Supp. 2d 584, 591 (E.D. Pa. 2009) ("[U]nder Title II of the ADA a plaintiff must establish that 1) he or she has a disability; 2) he or she is otherwise qualified; and 3) he or she is being excluded from participation in, being denied the benefits of, *or being subjected to discrimination* under the program solely because of her disability." (emphasis added)).
[37] *Disabled in Action*, 418 F. Supp. 2d at 655 (citing 42 U.S.C. § 12131(1)(C)).
[38] *Guynup v. Lancaster County*, No. 06-4315, 2008 WL 4771852, at *1 n.3 (E.D. Pa. Oct. 29, 2008) (citing *Duvall v. County of Kitsap*, 260 F.3d 1124, 1141 (9th Cir. 2001)).
[39] Def.'s Mem. Supp. Mot. to Dismiss [Doc. No. 11] at 6 (quoting *Disability Rights N.J.*, 796 F.3d at 301).
[40] *Id.*
[41] 796 F.3d 293 (3d Cir. 2015).

committed people with mental illness to judicial process before being forcibly medicated, explained that a Title II plaintiff must show "that he was excluded from a service, program, or activity of a public entity."

That formulation omits part of the statutory language of § 12132, however, which provides that disabled people may not "be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, *or be subjected to discrimination* by any such entity."[42] The decision in *Disability Rights* stems from a different context than this case—only the "exclusion" concept was relevant there. The full prima facie case as articulated in *Johnson*, which has been applied in other Third Circuit cases, accords with the statute's disjunctive language: A plaintiff who shows he was "otherwise discriminated against" but not "excluded" by a public entity makes out a prima facie case of discrimination under Title II.[43] Thus, Waters makes out a prima facie case if he was "otherwise discriminated against" by Amtrak, whether he was "excluded" or not.

Waters has met his pleading burden. The Amended Complaint plausibly alleges that an Amtrak employee singled out Waters and his travel companion because they are "visibly disabled," loudly berated them, and forced them to move from the accessible seats they had reserved and paid for to non-accessible seats.[44] It also alleges that the employee "used discriminatory words pertaining to [Waters' and his companion's] . . . health statuses" and that the employee placed a piece of luggage in the accessible seats they were forced to vacate, preventing Waters (or any other disabled person on board) from sitting there.[45] Although this

---

[42] 42 U.S.C. § 12132 (emphasis added).
[43] *See supra* note 36; *see also Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) (identifying three elements of prima facie case: the plaintiff "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was *otherwise subject to discrimination* because of her disability" (emphasis added)).
[44] Amend. Compl. at 3.
[45] *Id.*

may not be the typical Title II fact pattern—Title II cases more commonly involve issues of reasonable accommodation—the conduct Waters describes is, if true, plainly discriminatory.[46] Accordingly, Waters' claims will not be dismissed.

### C.    Unsigned Complaint

Finally, Amtrak points out that the *pro se* Amended Complaint is unsigned in violation of Rule 11.[47] Amtrak finds particular fault with the fact that after it noted the failure to sign in its Motion to Dismiss, Waters neglected to correct it. While *pro se* plaintiffs are certainly expected to follow the Federal Rules of Civil Procedure, courts in this district have "consistently interpreted" the less stringent standard applied to *pro se* plaintiffs as granting "leeway when [a plaintiff] has filed an unsigned complaint, ordering the plaintiff to cure the defect within a limited time rather than dismissing the case."[48] The Court finds that approach to be appropriate here and will order Waters to refile his Amended Complaint, signed and dated, by the time given in the accompanying Order.

### IV.    CONCLUSION

Waters' Amended Complaint states a claim under Title II of the ADA, and he has standing to bring this lawsuit, so his claims may proceed so long as he refiles his Amended Complaint with a signature. An appropriate Order follows.

---

[46] *Cf. Johnson v. Amtrak*, No. 08-4986, 2009 WL 1845226, at *10 (E.D. Pa. 2009) (granting summary judgment for Amtrak where plaintiff demonstrated only that he was "inconvenienced" by delays experienced by all passengers whether disabled or not); *McCree*, 2009 WL 166660, at *12 (granting summary judgment for transit entity where plaintiff did not demonstrate that transit worker "intentionally discriminated" against her).

[47] The original Complaint, filed in state court, was signed. *See* Doc. No. 1. Amtrak removed the case here and moved to dismiss, arguing in part that the Complaint was unacceptably vague. *See* Doc. No. 5. Waters filed a more detailed Amended Complaint in response, which he neglected to sign.

[48] *Mazzoni v. United States*, No. 05-5743, 2006 WL 1564020, at *1 (E.D. Pa. Apr. 17, 2006).